FILED
10/27/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANNETTE JOHNSON | No. 1:26-cr-00559<br>Judge Rebecca R. Pallmeyer<br>Magistrate Judge Young B. Kim<br>RANDOM / Cat. 3<br>Violations: Title 18, United States Code, Sections 1341, 1343, and 1346 |

**COUNT ONE**

The SPECIAL NOVEMBER 2025 GRAND JURY charges:

1. At times material to this indictment:

**East Aurora School District 131**

a. East Aurora School District 131 ("District 131") was a public school district and unit of local government governed by the District 131 Board of Education (the "District 131 Board") and located in the Northern District of Illinois.

b. The District 131 Board consisted of seven volunteer members elected to four-year terms, including a Board President whose responsibilities included presiding at all Board meetings, focusing Board meeting agendas on appropriate content, and administering the Oath of Office to new Board members.

c. District 131 contracted with certain vendor-companies to provide materials that supported the district's operations and initiatives.

d. During the 2021-2022 school year, District 131 received Elementary and Secondary School Emergency Relief ("ESSER") federal grant funds, which funds were set aside by Congress as part of the Coronavirus Aid Relief, and Economic Security ("CARES") Act and were intended to address the impact that the

COVID-19 pandemic had on elementary and secondary schools across the United States.

**Applicable District 131 Policies and Procedures**

e. District 131 had a Policy Manual in place, which set forth the purchasing and contracting policies employed by District 131, including the following:

i. The District 131 Board could approve major expenditures and payment of obligations.

ii. Every District 131 purchase and contract would "support a recognized District function or purpose as well as provide for good quality products and services at the lowest cost."

iii. Supplies, materials, or work involving an expenditure in excess of $25,000 would comply with State law bidding procedure, unless specifically exempted.

f. The District 131 Policy Manual also set forth standards of conduct applicable to District 131 Board members, including the following:

i. Board members were required to take an Oath of Office in which they swore or affirmed to, among other things, "respect taxpayer interests by serving as a faithful protector" of District 131's assets.

ii. Board members were to adhere to a Code of Conduct that set forth certain standards and principles, including, avoiding "any conflict of interest

or the appearance of impropriety which could result from [their] position," and not using "[their] Board membership for personal gain or publicity."

iii. No Board member was allowed to participate in the selection, award, or administration of a contract supported by a federal award if he or she had a real or apparent conflict of interest.

iv. Board members were required to annually file a Statement of Economic Interests form with the Kane County Clerk, which form would disclose, among other things, certain income received during the preceding calendar year, as well as the nature and source of such income.

**Defendant and Other Relevant Entities and Individuals**

g. Defendant ANNETTE JOHNSON was the President of the District 131 Board and member of the District 131 Finance and Personnel Committee. As the President of the District 131 Board, JOHNSON was an elected official who owed a duty of honest services to District 131.

h. JOHNSON was also the Chief Financial Officer of Company 1 and affiliated companies, Company 2 and Company 3. Company 1 had a bank account ending in 2968 at St. Charles Bank & Trust Company, N.A. (the "Company 1 Bank Account"). JOHNSON was a signatory on the Company 1 Bank Account.

i. Individual A was the owner of Company 1, Company 2, and Company 3. Individual A was a resident of the Northern District of Illinois. JOHNSON was in a romantic relationship with Individual A.

j. Company 2 paid Company 1 employees, including JOHNSON.

k. Business 1 was a company that marketed and sold air purifiers (the "Business 1 Air Purifiers") through a network of independent business owners.

l. Reseller 1 was an independent company that sold Business 1 Air Purifiers. Individual B was the Chief Executive Officer of Reseller 1. Reseller 1 had a bank account ending in 9067 at Bremmer Bank (the "Reseller 1 Bank Account").

**The Scheme**

2. Beginning no later than in or around August 2021, and continuing until at least in or around May 2023, at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANNETTE JOHNSON,

defendant herein, as well as others known and unknown to the grand jury, knowingly devised, intended to devise, and participated in a scheme to defraud District 131 of the intangible right to the honest services of defendant by means of materially false and fraudulent pretenses, representations, promises, and omissions through bribes and kickbacks, which scheme is further described below.

3. It was part of the scheme that JOHNSON agreed to accept and accepted a payment of approximately $1,300,000 from Reseller 1 to Company 1, in exchange for performing acts in JOHNSON's position as the District 131 Board President to benefit Reseller 1, namely, approving the quote from Reseller 1 for the sale of Business 1 Air Purifiers to District 131 for Board consideration, influencing and

agreeing to influence other District 131 Board members in connection with their votes to approve the purchase of Business 1 Air Purifiers from Reseller 1 for approximately $2,700,188.62, voting to approve the purchase of Business 1 Air Purifiers from Reseller 1, and voting to approve payments from District 131 to Reseller 1 related to the purchase of Business 1 Air Purifiers from Reseller 1.

4. It was further part of the scheme that JOHNSON steered District 131 to purchase the Business 1 Air Purifiers from Reseller 1 and concealed from District 131 employees and Board members her involvement in the transaction and the payment that she expected to receive from Reseller 1.

5. It was further part of the scheme that on or about September 3, 2021, Individual B established an account for JOHNSON with Business 1 under the name of Company 1 to enable JOHNSON to purchase Business 1 Air Purifiers.

6. It was further part of the scheme that on or about September 7, 2021, JOHNSON used the account that Individual B established for Company 1 to purchase sample wearable air purifiers from Business 1 and caused Business 1 to ship the samples to District 131, in advance of a meeting between Individual B, District 131 officials, and others.

7. It was further part of the scheme that JOHNSON arranged for Individual B to meet with District 131 officials on or about September 14, 2021, for the purpose of giving Individual B an audience for the sale of the Business 1 Air Purifiers from Reseller 1 to District 131. Before making these arrangements,

JOHNSON did not disclose to District 131 that she had a personal and economic interest in District 131's purchase of Business 1 Air Purifiers from Reseller 1.

8. It was further part of the scheme that Individual B presented Reseller 1 as a sole source technology provider of Business 1 Air Purifiers to District 131 personnel and the District 131 Board.

9. It was further part of the scheme that on or about September 17, 2021, JOHNSON was invited to participate in a Zoom call with Individual A, Individual B, and individuals employed by Individual A and Business 1, which call was entitled "East Aurora School District 131 discussion."

10. It was further part of the scheme that after the Zoom call on or about September 17, 2021, Individual B sent JOHNSON, and individuals employed by Individual A and Business 1, a quote for the Business 1 Air Purifiers and accompanying materials and claimed to need JOHNSON's approval of the materials before submitting them to District 131. In an accompanying email, Individual B confirmed with JOHNSON that the "margin" or the portion of the proceeds from the sale of Business 1 Air Purifiers to District 131 that Company 3 would receive was more than $1,000,000.

11. It was further part of the scheme that on or about September 18, 2021, JOHNSON forwarded to Individual A an email communication about the sale of the Business 1 Air Purifiers, which included a District 131 internal memorandum, the

quote for the sale, and a letter from Individual B to District 131.

12. It was further part of the scheme that in the hours leading up to a District 131 Board meeting on or about September 20, 2021, Individual B emailed "key bullet points" about the Business 1 Air Purifiers to JOHNSON and no other District 131 official or Board member, in order to assist JOHNSON to persuade other District 131 Board members to vote to approve the purchase of Business 1 Air Purifiers from Reseller 1.

13. It was further part of the scheme that at the District 131 Board meeting on or about September 20, 2021, JOHNSON spoke in favor of and voted to approve the purchase of the Business 1 Air Purifiers from Reseller 1, in the amount of approximately $2,700,187, without disclosing to the Board or other District 131 officials that she had a personal and economic interest in the sale.

14. It was further part of the scheme that at a District 131 Board meeting on or about November 1, 2021, JOHNSON voted to approve a payment in the amount of approximately $2,700,188.62 from District 131 to Reseller 1 for the Business 1 Air Purifiers, without disclosing to the Board or other District 131 officials that she had a personal and economic interest in the payment.

15. It was further part of the scheme that on or about November 1, 2021, JOHNSON caused District 131 personnel to issue a $2,700,188.62 check, using ESSER funds, from District 131 to Reseller 1, as payment for the Business 1 Air

Purifiers.

16. It was further part of the scheme that on or about November 2, 2021, JOHNSON and Individual B caused District 131 to mail to Individual B in Wisconsin, the $2,700,188.62 check from District 131 to Reseller 1.

17. It was further part of the scheme that on or about November 4, 2021, one day after the $2,700,188.62 check from District 131 was deposited into the Reseller 1 Bank Account, JOHNSON directed Individual B to send the previously agreed-upon payment from Reseller 1 to Company 1 at an address in Elk Grove Village, Illinois, which payment Individual B labeled a "rebate."

18. It was further part of the scheme that, on or about November 5, 2021, Individual B caused a $1,300,000 check, labeled "commission," to be mailed to Company 1, as directed by JOHNSON, without disclosing the payment to District 131 officials or Board members.

19. It was further part of the scheme that on or about November 8, 2021, JOHNSON deposited or caused to be deposited the $1,300,000 check into the Company 1 Bank Account.

20. It was further part of the scheme that, in the calendar year of 2021, Company 2 paid JOHNSON in excess of $7,500 in connection with JOHNSON's work for Company 2 and Company 1, the entity that had received the payment from Reseller 1.

21. It was further part of the scheme that, in order to conceal and disguise the existence, source, and purpose of the payment that Individual B caused to be made to Company 1, and JOHNSON's income relating to her work for Company 1, in or around April 2022, JOHNSON filed a Statement of Economic Interest with Kane County, which form failed to disclose Company 1 or Company 2 as a source of income.

22. It was further part of the scheme that, in or around September 2022, Individual B emailed JOHNSON regarding an "Extended warranty" for the Business 1 Air Purifiers, and attached documents related to the purchase of replacement parts for the Business 1 Air Purifiers.

23. It was further part of the scheme that at a District 131 Board meeting on or about May 15, 2023, JOHNSON voted to approve a payment in the amount of approximately $201,077 from District 131 to Reseller 1 related to annual services for the Business 1 Air Purifiers that District 131 had purchased in or around September 2021, and for which Company 1 had received $1,300,000.

24. It was further part of the scheme that on or about May 15, 2023, JOHNSON and Individual B caused District 131 to issue a check in the amount of $201,077 made payable to Reseller 1 for annual services for the Business 1 Air Purifiers.

25. It was further part of the scheme that JOHNSON misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

26. On or about November 2, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANNETTE JOHNSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be deposited with a commercial interstate carrier, namely, United Parcel Service, a package to be sent and delivered to Individual A in Somerset, Wisconsin, which package contained a check from District 131 to Reseller 1 in the amount of approximately $2,700,188.62;

In violation of Title 18, United States Code, Sections 1341 and 1346.

**COUNT TWO**

The SPECIAL NOVEMBER 2025 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 25 of Count One of this indictment are incorporated here.

2. On or about November 6, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANNETTE JOHNSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be delivered by U.S. mail and commercial interstate carrier, a package addressed to Company 1 in Elk Grove Village, Illinois, which package contained a check from Reseller 1 to Company 1 in the amount of approximately $1,300,000;

In violation of Title 18, United States Code, Sections 1341 and 1346.

**COUNT THREE**

The SPECIAL NOVEMBER 2025 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 25 of Count One of this indictment are incorporated here.

2. On or about November 8, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANNETTE JOHNSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the processing of the check from Reseller 1 to Company 1 in the amount of approximately $1,300,000 into the Company 1 Account;

In violation of Title 18, United States Code, Sections 1343 and 1346.

## FORFEITURE ALLEGATION

The SPECIAL NOVEMBER 2025 GRAND JURY alleges:

1. Counts One through Three of this indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. As a result of her violations of Title 18, United States Code, Sections 1341, 1343, and 1346, as alleged in Counts One through Three of this indictment,

ANNETTE JOHNSON,

defendant herein, shall forfeit to the United States any and all right, title, and interest she has in any property, real and personal, which constitutes or is derived from proceeds traceable to the offenses in Counts One through Three.

3. The property to be forfeited by defendant as a result of her violation of Title 18, United States Code, Sections 1341, 1343, and 1346, includes, but is not limited to, a personal money judgment in the amount of approximately $1,300,000.

4. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

________________________
FOREPERSON

________________________________________
UNITED STATES ATTORNEY